E. G. HANRICK ET AL. v. MARY W. ALEXANDER ET AL.

LIEN—VENDOR AND VENDEE—INDORSER.— B contracted to sell a tract of land to C for $20 per acre. Before a deed was made, C agreed to sell the same land to D for $40 per acre. No bond for title was given to C, but, by agreement between the three parties, D gave his notes direct to B for the full amount under his contract with C, and received a bond for title. B then indorsed and delivered half the notes in amount to C, as his profits on the transaction, with the understanding that B should not be responsible for their payment, but that the transfer was made to enable C to collect the amount he was to receive from D. D took possession of the land and abandoned it, when possession was taken by E, the widow of C, who, after holding it for two years, surrendered possession to B. In the suit afterwards brought by E in behalf of herself and the minor heirs of C, against D as maker and B as indorser of the notes, several years after their maturity : Held—

1. That neither on principle nor authority did the minority of the heirs of C exempt them from due diligence by suit in order to secure and fix the liability of B, the indorser, under article 229 of Paschal's Digest.

2. That, under the statute, the notorious insolvency of D, if alleged and proven, would excuse the delay in bringing suit.

3. That if D's only property was a claim to the land under the title bond, and if, after he had fled from the country, B, who retained the legal title, took possession of the land because of D's failure to comply with his contract to pay, and made another contract with E, then D's interest in the land would not constitute such property as would defeat the plea of D's insolvency, if otherwise good.

4. If B's indorsement was simply to transfer the right of action to C without recourse, this, as between B and C's widow and heirs, would be a sufficient defense to defeat the recovery of a personal judgment against B.

5. If E, after qualifying under the statute as surviving wife, went upon the land under a new agreement with B, in which she undertook to carry out D's contract, and afterwards this agreement was cancelled and E redelivered possession of the land to B, and retained the notes indorsed by B to her husband as evidence against D, this would constitute a forfeiture of her right of action on the notes, both for herself and for the minor heirs of C, for a personal judgment as well as for a lien on the land. If such action of E was without qualifying as surviving wife, then she

forfeited only her own right of action, without prejudice to the rights of C's minor heirs.

6. If the rights of C's minor heirs were not forfeited, they would be entitled to a lien on the land subordinate to the prior lien of B for his portion of the purchase-money, and E would be entitled to her lien also, if her right of action had not been forfeited.

7. If a lien exists, under the facts, in favor of E or the minor heirs of C, B would be entitled to reasonable time to pay off the same; in default of which, the land should be sold as under execution and the net proceeds applied, first, to the payment of the purchase-money notes; second, to the payment of the amount due the minor heirs of C; or if E's claim was not forfeited, then to the payment of her claim and that of the minor heirs, *pro rata*.

APPEAL from McLennan. Tried below before the Hon. X. B. Saunders.

Suit was brought on two promissory notes for land, executed by J. E. Burt to E. G. Hanrick, dated October 22, 1870, one due on or before January 1, 1871, and the other on or before January 1, 1872, both indorsed by the payee in blank, and both were made on the same day and delivered to Jesse Blocker, the then husband of the plaintiff, Mary W. Alexander.

Jesse Blocker died a few days after the delivery of the notes to him, and his surviving wife subsequently married Alexander.

When Blocker died he left two minor children, one by a first wife and the other by Mary W., one of the plaintiffs.

Mary W., joined by her husband Alexander, for herself and as natural guardians for the two minors, instituted this suit against Burt, the maker of the notes, and Hanrick, the indorser, on March 9, 1874.

The indorser alone made defense.

It is deemed unnecessary, in view of the opinion, to notice at length the pleadings in this case. The only evidence, besides the production of the notes sued on, was that of E. J. Gurley. His testimony is too lengthy for insertion, but its salient points are indicated by the statement made in the

beginning of the syllabus, in connection with the brief statement made here of the case.

The case was submitted to the court, who sustained the exceptions of appellants " so far as the interest of the plaintiff Mary Alexander extends, that is to say, one-half," and overruled it as to " the other half interest of the minor plaintiffs," and rendered judgment in favor of the guardian *ad litem,* for the use of the minor plaintiffs, for $2,081.25, gold, with ten per cent. interest from date of judgment, being one-half of the notes sued on; ordered the land to be sold as under execution and the proceeds of sale to be distributed as follows: $1,800, gold, rent charged to appellants for three years first to be deducted from the sum due by J. E. Burt; then the remainder of the proceeds of sale " to be distributed among the plaintiffs and the defendant Hanrick according to the sum due them respectively,—the plaintiff Mary Alexander being entitled to one-half the amount recovered by the plaintiffs and the minor plaintiffs the other half. It is further ordered and decreed that the plaintiffs do have and recover of the defendant Burt the sum of $4,162.50." Judgment for costs was rendered against both Burt and appellants.

*Herring, Anderson & Kelley,* for appellants.—The first assignment presents the ruling of the court in sustaining the special exception of appellants as to appellee Mary W. Alexander and overruling it as to the minors. In committing this error, the court must have confounded the law of principal and surety with that of indorser. The former (Paschal's Dig., art. 4784) provides: " If the creditor or obligee, not being under legal disability, shall fail to bring his suit to the first term of the court thereafter, or to the second term, showing good cause why he did not bring it to the first term," &c., * * * " the surety giving such notice shall be discharged from all liability thereon." The latter (Paschal's Dig., art. 229) makes no exception and has no saving clause. In Frois *v.* Mayfield it is held that the former does not apply to bills of exchange

or promissory notes. (33 Tex., 806.) But the error of the court below in construing article 229 as a statute of limitation, is not only too manifest for argument, but expressly shown by the following cases: Shepard *v.* Phears, 35 Tex., 770; Huffman *v.* Hulbert, 13 Wend., 377; Davis *v.* Huggins, 3 N. H., 231; Bellows *v.* Lovell, 5 Pick., 307; Erie Bank *v.* Gibson, 1 Watts, 143; Cope *v.* Smith, 8 Serg. & R., 110.

(Counsel also argued at length other propositions involved in the case.)

*Walton, Green & Hill,* also for appellants.

I. The statute in regard to when an indorser shall be sued, is not a statute of limitations.

The transaction was not one between merchant and merchant, their factors or agents; neither so alleged nor proven. (Brock *v.* Jarman, 1 Tex., 202; Hutchins *v.* Flintge, 2 Tex., 475; Elliott *v.* Wiggins, 16 Tex., 597; Locke *v.* Huling, 24 Tex., 312; Shepard *v.* Phears, 35 Tex., 773; Hart *v.* Mills, 38 Tex., 515; Yale *v.* Ward, 30 Tex., 17; Paschal's Dig., arts. 229, 4783, 4784.)

The failure to institute suit at the first term of the court, or at the second term, giving sufficient reason for not bringing it at the first, against an indorser, after the maturity of the note, releases the indorser from liability on the note.

The failure to bring a suit against an indorser as provided in article 229 of Paschal's Digest, releases the indorser from liability on the note, and deprives the holder of the note of any recourse against such indorser.

II. E. G. Hanrick was not an indorser for value, but an indorser for convenience only. (Jones *v.* Holliday, 11 Tex., 414, 415, and authorities there cited; Flanagan *v.* Boggess, 46 Tex., 336; Griffin *v.* Chadwick, 44 Tex., 408.)

III. The court erred in ordering the land to be sold for the benefit of the plaintiffs.

1. Neither the original purchase-money due to Hanrick nor any part thereof has ever been paid.

32

2. The note in the hands of Hanrick was the purchase-money note, while the notes delivered to Blocker were representative of profit on a resale by Blocker.

3. The land was ordered to be sold to make a *pro - rata* distribution on all the notes, ( $6,000,) less a deduction from Hanrick's $3,300 note because of use and occupation of the land. (Wynn *v.* Flannegan, 25 Tex., 781 ; Brown *v.* Christie, 35 Tex., 690 ; Ellis *v.* Singletary, 45 Tex., 37.)

IV. Hanrick, on the failure to pay the purchase-money by Blocker or by Burt, had the right to sue for and recover the land, or to resume the possession, and thus terminate the incomplete sale.

1. No part of the purchase-money was ever paid.

2. The last note was overdue twelve months when Hanrick resumed the possession.

3. The possession was resumed with the consent of the surviving wife. (Dunlap *v.* Wright, 11 Tex., 604; Estes *v.* Browning, 11 Tex., 243 ; Walker *v.* Emerson, 20 Tex., 711; Secrest *v.* Jones, 21 Tex., 132 ; Roberts *v.* Lovejoy, 25 Tex. Supp., 441.)

*Thomas Harrison,* for appellees.—The obligation of Blocker to Hanrick was annulled and the evidence of it destroyed. A new debt and a new debtor were created.

That was novation. "There is novation when a new debtor is substituted in the place of the old." (Partidas, law 15, tit. 14, p. 5; Smith's Civil Law of Spain and Mexico, art. 5, sec. 6, p. 127.)

" The old debt is wholly extinguished by the new." (Bouv. Law Dict., p. 241, par. 3.)

" Novation extinguishes the original obligation and leaves the new in full force. It also liberates the mortgages and securities given for the fulfillment of the original obligation." (Partidas, law 15, tit. 14, p. 5 ; Smith's Civil Law of Spain and Mexico, sec. 589, p. 128.)

" The second contract is simple and independent, and upon

its terms the action *ex stipulato* must be brought." (Bouv. Law Dict., p. 242, par. 4.)

Hanrick, then, had no further claim upon Blocker, nor upon the land, on account of the contract with Blocker. He can resort to the land only as a security for Burt's debt to him, which became due 1st of January, 1872. Hanrick, by indorsements, transferred to Blocker two of the purchase-money notes, the first for $2,000, due 1st of January, 1871, and the other for $700, due 1st of January, 1872, creating in Blocker at once, as if he were joint owner, an interest in the land precisely similar to his own, and to be enforced in the same way but not at the same time; for by special agreement between the parties the note first due was transferred to Blocker, in order that he might first collect his debt, and he had an undoubted right to go upon the land for that purpose, if it was not paid at maturity by Burt.

There is great diversity of opinion in regard to the manner in which the purchase-money of the land shall be distributed among the holders of the purchase-money notes, when transferred by the vendor in the ordinary course of trade.

In Alabama, the note first assigned has priority. In Griggsby *v.* Hair, 25 Ala., 327, the court says: "Where several notes taken for the purchase-money of land are assigned at different times, the assignment of each note is, *pro tanto*, an assignment of the vendor's lien, unless expressly waived, and the liens of the several assignees are to be preferred according to the priority of their assignment, without reference to the maturity of the notes."

In Kentucky, all seem to be of equal rank and are paid *pro rata*. (Broadwell *v.* King, 3 B. Monr., 449; Thomas *v.* Wyatt, 5 B. Monr., 132.)

In Indiana, the note first due has priority; (The State Bank *v.* Tweed, 8 Blackf., 447;) while in other States the note first sued on has priority, on the well-known principle that courts of equity will favor the vigilant. (McDonough *v.* Cross, 40

Tex., 287.)   In Lynch v. Elkes, 21 Tex., 230, the note first due being also the first sued on, was held to have priority.

It is needless to discuss here the comparative justness of the above rules, or which one of them should be applied to the case before the court, as under either of them the note held by plaintiffs had priority over the one held by Hanrick. It was first assigned, first due, and first sued on.   *   *   *

Admit, for the sake of argument, that the whole transaction between Blocker and Hanrick was annulled and that the land was restored to Hanrick, which is not consistent with the fact proven; that Hanrick reserved the interest due him by Blocker, adding it to Burt's note, and increasing it from three thousand to thirty-three hundred dollars; admitting, in short, that this case is to be determined by the rules which govern ordinary transfers of purchase-money notes, still the conduct of Hanrick in appropriating the whole estate cannot be justified in law or justice.   If he had clearly the prior right, he ought to have called in the parties known by him to be interested; for they both, Blocker and Burt, (it is not shown that time was the essence of the contract,) had the right to tender payment and receive a deed.   The right of the vendor of land to retake the same upon failure of payment, does not apply where others hold a vendor's note; or if he does retake, he must pay the vendor's note in the hands of his assignee, as in this case he retakes subject to the right of Blocker.

Justice Moore, in McDonough v. Cross, 40 Tex., 287, says: "Certainly one of the creditors cannot, merely by a suit in his own behalf, seize upon and appropriate to his own benefit the entire security or trust fund."   How can he do it without a suit?

If Hanrick had sold the land to one ignorant of Blocker's rights, as he might perhaps have done, for cash, the legal title being in him, for a sum larger than was due on Burt's notes, surely he would have been held to pay the notes assigned by him to Blocker; and that view of the subject is decisive of

his right to retake the land—the whole estate—without accounting to the widow and children of Blocker, who, according to his attorney, have no rights that he is bound to respect, even as to the excess over his claim for which the land may have sold.

The minor plaintiffs certainly have lost none of their rights. Their mother could not waive or surrender them.

BONNER, ASSOCIATE JUSTICE.—The judgment in this case must be reversed, for fundamental errors apparent upon the record, in this: that it is uncertain and incomplete; that it purports to adjust all the equities between the parties when the pleadings did not authorize it; that there was a personal judgment rendered against the defendant E. G. Hanrick, which was not warranted by the case as presented by the record.

As the cause must be remanded, we proceed to indicate our opinion of the law upon questions which the record shows may arise upon another trial.

1. Neither upon principle—because tending to embarrass the negotiability of commercial paper—nor upon authority does the minority of two of the plaintiffs, as the holders of the notes sued upon, exempt them from due diligence by suit, in order to secure and fix the liability of the defendant Hanrick, as indorser, under article 229 of Paschal's Digest. (Shepard *v.* Phears, 35 Tex., 763.)

2. Under our statute, the notorious insolvency of J. E. Burt, the maker of the notes, if alleged and proven, would be a sufficient excuse for such failure to institute suit. (Paschal's Dig., art. 225; Insall *v.* Robson, 16 Tex., 128.)

If the testimony should show that the only property Burt had was a claim to the land in question under a title bond from Hanrick, and that he had fled the country without a compliance on his part with the terms of the same, and that by reason thereof Hanrick, who already had the legal title to the land, took possession of the same, or made another con-

tract in regard thereto with Mrs. Alexander, this, of itself, would not constitute such property as would defeat the plea of involvency, if otherwise good.

3. If the indorsement by Hanrick of the notes sued on was simply to transfer the right of action thereon to Blocker, without recourse on Hanrick, this, as between him and Mrs. Alexander and the children of Blocker, would be a sufficient defense to prevent the recovery by them of a personal judgment against Hanrick.   (Wade *v.* Wade, 36 Tex., 529.)

4. If after the death of Jesse Blocker, his wife (now Mrs. Alexander) duly qualified as surviving wife under the statute in such cases made and provided, and if after Burt fled the country she, as such duly qualified surviving wife, by agreement with Hanrick, went upon the land and assumed to carry out the contract of Burt, and afterwards the contract was cancelled, and she voluntarily abandoned the same and redelivered up the possession of the land to Hanrick, and retained the notes sued on simply as evidence of a claim against Burt for personal damages for breach of his contract, this would be a forfeiture and abandonment of the right of action, both for herself and for the minor plaintiffs, against Hanrick, for a personal judgment and also for a lien on the land.

If, however, she did this without having thus qualified as surviving wife, she thereby forfeited and abandoned, as above stated, her own individual rights, but did not prejudice the rights of the minor plaintiffs.

5. If their rights have not been forfeited and abandoned, the minor plaintiffs, for the payment of their half interest in the notes sued on, would be entitled to a lien on the land subordinate to the prior lien of Hanrick; and Mrs. Alexander would also be entitled to such lien as to her interest, if her right of action therefor has not been forfeited and abandoned as above stated.

6. That Hanrick should have a reasonable time to voluntarily pay off and discharge this lien, and in the event that he should fail to do this, the land should be sold as under exe-

cution and the net proceeds of the sale applied, first, to the payment of the amount of the note held by him against Burt, with interest thereon to the time he may have retaken and held possession of the land; second, to the amount of the principal and interest due the minor plaintiffs, on their half interest in the notes sued on, or to the amounts due both the minors and Mrs. Alexander, *pro rata,* in the event that she should be entitled to an interest therein.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.